ISAAC E. COTHEAL, Executor of Catharine E. Cotheal, deceased, Appellant, *v.* ELIZABETH M. COTHEAL, ANNE COTHEAL and CATHARINE E. COTHEAL, Respondents.

A married woman during coverture made a will disposing absolutely of all her property. Children were afterwards born to her, who survived her and were left at her death, wholly unprovided for and unmentioned in her will.—*Held*, nevertheless (GROVER and JAMES, JJ., dissenting), that the devises and bequests of the will remained fully operative, unrevoked and unaffected by these events.

The provision of the Revised Statutes (§ 49, art. 3, title 1, chap. 6, part 2d), that, " whenever a testator shall have a child born after the making of his will, either in his lifetime or after his death, and shall die leaving such child so after born, unprovided for by any settlement, and neither provided for nor in any way mentioned in his will, every such child shall succeed to the same portion of his *father's* real and personal estate as would have descended or been distributed to such child if the *father* had died intestate," has not since the act of 1849, giving to married women the right to devise and bequeath their property *in the same manner as if they were unmarried*, become applicable to them; nor are their testamentary dispositions limited by or subject to it.

Its interpretation in this respect, is in no way affected by the 11th section of the act of Dec. 10th, 1828, entitled " an act to amend the Revised Statutes," providing that when in any statute any party or person is described or referred to by words importing the *masculine gender, females as well as males* should be deemed to be included, unless something in the subject or context is repugnant to such a construction.

(Argued March 31st, 1869, and decided June 11th, 1869.)

APPEAL from affirmance by the General Term of the second district (LOTT, J., dissenting), of a judgment for the defendants, entered upon the decision of the court without a jury.

The action was brought by the executor of the will of Mrs. Catherine E. Cotheal, to determine its validity and legal effect.

On the 22d day of October, 1856, the plaintiff intermarried with Catherine E. Rapelje. On the 16th day of June, thereafter, she made and executed the will in question, in due form. By the will she devised and bequeathed to the plaintiff all her estate, real and personal. Afterwards, three children of the said marriage were born, who are the defendants in this action. On the 8th day of January, 1864, the said Catharine died, leaving real and personal estate of the value of about $50,000.

The Supreme Court held that the defendants, children of the said Catharine, born after the making of the will, unprovided for by any settlement, and neither provided for nor mentioned in the will, do, by virtue of our statute (R. S., part 2, chap. 6, title 1, section 49), each succeed to the same portion of their mother's estate as would have descended or been distributed to him or her, if their mother had died intestate, and, therefore, that the plaintiff, their father, is entitled to the personal estate only, and the defendants are each entitled to one-third of the real estate in fee, subject to the life estate of the plaintiff, as tenant by the curtesy.

From the judgment declaring this result, the plaintiff appeals.

*John Thompson*, for the appellant, insisted: 1st. That, at common law, to the revocation of a will by implication, marriage as well as the birth of children being necessary, the will remained unrevoked and unaffected, unless by the statute. 2d. That the statute was, by its terms, necessarily confined to the case of a married "man" and a "father;" and this intentionally so, for at that time no married woman could make a will. 3d. By the act of 1850, married women were empowered to make a will, but only with the same effect as a *feme sole.* No such consequences as claimed here could follow the will of a *feme sole.*

*Allard Anthony*, for the respondents. He argued that the words of the Revised Statutes (part 2d, chap. 6, title 1st, article 3d, section 49), should be construed to cover the case of married women, since they had been given the right to make wills. It was unreasonable to limit the effect of the father's will, and protect his after-born children, and leave the mother's to operate so as to leave children unprotected.

The acts are in *pari materia*, and should be brought to a *harmonious* interpretation.

When the expression in a statute is particular and special, but the reason is *general*, the expression should be deemed general.

The mischief is the same in each case. (1 Kent, 472.)

Section 11 of the act of 1828 is an express remedy for the difficulty.

WOODRUFF, J. Prior to the year 1849 no married woman was authorized to devise or bequeath her real or personal estate.

By the statute enacted in that year, it is provided that "Any married female may  *  *  *  devise real and personal property and any estate, or interest therein, and the rents, issues and profits thereof in the same manner and with like effect as if she were unmarried."

The plaintiff brings into court a will duly executed since

this act was passed, made by a married female, and inquires, what is its legal effect?

.The answer would, on first impression, seem to be obvious, to wit: It has the same legal operation and effect precisely as it would have if the testatrix was unmarried when she made and published the will. If, being unmarried, such a will would operate to give to the devisee and legatee the property therein mentioned, then the fact that she was a married woman shall not impair its efficiency.

An unmarried woman has full power to dispose of her estate, real and personal, to whom she pleases, and her will has effect according to its tenor. If, by statute, the power is conferred upon a married woman to make such disposition with the like effect, her will should operate according to its tenor, also.

The argument of the respondent would be quite plausible if the statute conferring power on a married woman to devise, had declared that she might devise, &c., with the same power already possessed by her husband, and with like effect. In such case, whatever statutes were in force operating to work a partial or total revocation of his will, might be said to apply to hers, also.

This is giving a somewhat literal construction to the statute, and it may be proper to consider whether it be too narrow. What if anything would operate to impair the effect of a will made by an unmarried female? Her subsequent marriage operates as a revocation (2 R. S., 64, § 44), but that has no application here, for the testatrix was already married, and being married, her state of coverture shall not operate to affect the will she made. It is not claimed that, by the common law, the mere birth of children operated in any case to revoke or affect the operation of a will.

By statute, however, "Whenever a testator shall have a child born after the making of his will, and shall die leaving such child, so after born, unprovided for by any settlement and neither provided for nor in any way mentioned in his will, every such child shall succeed to the same portion of his

father's real and personal estate as would have descended or been distributed to such child if the father had died intestate," &c.

This statute was in full force when the act authorizing a married female to devise, &c., was passed, and it is claimed that the defendants here may take under its provisions a share of their mother's estate.

But this statute must be deemed to have been before the mind of the legislature when the act of 1849 was passed, and they nevertheless said that the will of a married female shall have the like effect as if she were unmarried, *i. e.*, shall have effect according to its tenor. It would have been easy to add, if so intended: provided always, if children be thereafter born of her not provided for in such will, or otherwise, they shall take the same share of her estate as if she died intestate.

This substantive proviso the court is asked to annex to a statute which declares that the will shall have like effect as if the testatrix were a *feme sole*.

It is plausibly argued that there is no sufficient reason why the will of a married female should operate to the disherison of her after-born children, and yet that the will of her husband should not operate to the disherison of his children afterwards born.

That may be quite true, and may, perhaps, indicate that when the act authorizing married women to devise and bequeath was passed, the contingency that children might afterwards be born of them was overlooked. And yet it is possible to suggest, that the legislature intended to give a married woman full power over her property and leave the children to such provision as the father may make for them; or that it was presumed safe to leave the disposition of her property under the influence of her natural affection and maternal instincts.

Again, it is said that to leave the will of a married woman to have full effect, notwithstanding the birth of children, is to produce a want of harmony in our several statutes. That they should all be read together, and should be construed so

as to harmonize with a general intent that no will should be permitted to operate to cut off children born after it was made.

· The fault of this suggestion arises from overlooking the fact that the authority given to a married woman to make a will is itself an innovation upon the system. It has operation by force of the statute, conferring the authority and precisely such operation as the statute gives it.

To annex to this statute a qualification inconsistent with its language, and especially a qualification which is in its own terms inapplicable to the will or estate of a mother, is not construction, but legislation, and that is not within the province of a judicial tribunal.

For these reasons, as well as because I concur in the dissenting opinion in the court below, that no rule of construction furnished by the Revised Statutes or otherwise, will enable us to read the 49th section of the Revised Statutes, by substituting mother for "father," and mother's real and personal estate for "father's real and personal estate," I think the judgment should be reversed and the plaintiff be declared entitled to the whole estate of the decedent, real and personal, according to the tenor of the will.

HUNT, Ch. J., LOTT, MASON and DANIELS, JJ., concurred with WOODRUFF, J., for reversal.

GROVER and JAMES, JJ., for affirmance.

Judgment reversed.