(116 App. Div. 807)

OBECNY v. GOETZ.

(Supreme Court, Appellate Division, Second Department. January 18, 1907.)

1. DESCENT AND DISTRIBUTION—EFFECT OF WILL—PRETERMITTED CHILD.

2 Rev. St. (1st Ed.) pt. 2, c. 6, tit. 1, § 49, provides that whenever a testator shall have a child born after the making of his will, and he dies leaving such child unprovided for, the child shall succeed to the same portion of the father's estate as would have descended or been distributed to him if the father had died intestate. Laws 1869, p. 40, c. 22, amended the statute by substituting the word "parent" in place of "father." Rev. St. (5th Ed.) pt. 2, c. 6, tit. 1, § 93 (70), in relation to wills, provides that the provisions of such title shall not be construed to impair the validity of the execution of any will made prior to the taking effect of such title or to affect the construction of any such will. *Held*, that where testatrix's will was executed in 1860 and she died in 1876, no provision having been made for a child born after the execution of the will, the child was entitled to the share provided for by section 49, inasmuch as section 93 did not affect either the validity or construction of the will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Descent and Distribution, § 128.]

2. SAME.

The statute provides for a child who is unprovided for outside of the will, and neither provided for nor in any way mentioned in the will and not for a child who may have been provided for by a settlement, and yet is not provided for or mentioned in the will.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Descent and Distribution, §§ 126–130.]

3. PARTITION—WHO MAY SUE.

A child born after the execution of the parent's will and within the protection of the statute, so as to be entitled to a share of real estate, the legal title to which stood in the name of one claiming under the parent's legatee, might maintain partition for her share.

4. SAME—EQUITIES.

Rev. St. (1st Ed.) pt. 2, c. 6, tit. 1, § 49, provides that whenever a testator shall have a child born after the making of his will, and he dies leaving such child unprovided for, the child shall succeed to the same portion of the father's estate as would have descended or been distributed to him if the father had died intestate. Laws 1869, p. 40, c. 22, amended the statute by substituting the word "parent" in place of "father." *Held*, that where one claiming under testatrix's sole devisee, in ignorance of the rights of a child born after the execution of the will, but who was within the protection of the statute. paid off mortgages on the premises at the death of testatrix and paid taxes, assessments, and made repairs and improvements, in partition by the child the judgment should be without prejudice to a lien for the amount paid in discharge of the mortgages, etc.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Partition, §§ 228, 236–245, 253, 254.]

Appeal from Special Term, Kings County.

Partition by Barbara Obecny against Kunigunda Goetz impleaded with Victor Obecny. Appeal by the former defendant from a judgment in favor of plaintiff. Reversed, and new trial granted.

Argued before HIRSCHBERG, P. J., and JENKS, HOOKER, GAYNOR, and MILLER, JJ.

Louis J. Altkrug, for appellant.

Louis J. Halbert, Jr., for respondent.

JENKS, J.   The action is partition, and the appeal is by the defendant from the interlocutory judgment therein.   In 1857 Annah Dehnert owned the premises in fee.   In 1860 she executed her will, devising all of her estate absolutely to the husband, Peter Dehnert.   In 1876 Annah died, survived by her said husband and four children, of whom three were born after the execution of her said will.   In 1877 the will was probated, and the testator's husband, Peter, entered into possession of the premises and held them until 1880, when he conveyed them to Miller, who in 1881 conveyed them to the defendant, Goetz. In 1903 the plaintiff, one of the children of Annah and Peter Dehnert born after the execution of her mother's will, began this action.   The learned Special Term in its interlocutory judgment decides inter alia that each of the children of Annah Dehnert, including the plaintiff, born after the execution of the will, became seised of an undivided one-fourth interest in the premises subject to curtesy.   The ground of such decision is that the will was made inoperative as to the children of the testator born after the execution of her will perforce of the statute.   If the testator had died before 1869, then this question must be decided adversely to the plaintiff for the reason that the statute then applied to the will of a father only.   Cotheal v. Cotheal, 40 N. Y. 405.   The statute (section 49 of article 3 of title 1 of chapter 6 of part 2 of the Revised Statutes [1st Ed.]) was amended by chapter 22, p. 40, of the Laws of 1869, by substituting the word "parent" in place of the word "father."

As a will is ambulatory, the general rule is that it must be considered upon the law as it exists at the time of the death of the testator. Bishop v. Bishop, 4 Hill, 138; De Peyster v. Clendining, 8 Paige, 304, affirmed 26 Wend. 21; Parker v. Bogardus, 5 N. Y. 309; Moultrie v. Hunt, 23 N. Y. 394; People v. Powers, 147 N. Y. 104, 41 N. E. 432, 35 L. R. A. 502; Schouler on Wills, § 11.   Hence as section 49 was amended in 1869 so as to apply to either a father or a mother, and the testator did not die until 1876, the section applies to the will of this testator, unless the will was excluded from its purview by some other statute.   The learned counsel for the appellant insists that such a saving statute is found in 3 Rev. St. (5th Ed.) p. 153, pt. 2, c. 6, tit. 1, § 93 (70):

"The provisions of this title shall not be construed to impair the validity of the execution of any will made before this chapter shall take effect; or to affect the construction of any such will."

The section also appears in 3 Rev. St. 1875 (Banks & Bros.' 6th Ed.) p. 72, pt. 2, c. 6, tit. 1, § 102, and 3 Rev. St. 1882 (Banks &

Bros.' 7th Ed.) p. 2288, pt. 2, c. 6. tit. 1, § 70.  I am of opinion that it does not apply.  It is limited in terms "to impair the validity of the execution," or "to affect the construction."  In the first place, there are provisions in that title relative to execution and construction to which the words of this section are apt—e. g., sections 7 (5), 38 (40,) 39 (41), 44 (46), 45 (47), and 50 (52), described as in edition of 1875 (volume 3, pt. 2, c. 6, tit. 1, pp. 58, 63–65); and, in the second place, this section does not affect either the validity of the execution or the construction of this will.  The validity of the execution is not affected, for the will stands and may be probated.  Matter of Bunce, 6 Dem. Sur. 278; Matter of Murphy, 144 N. Y. 557, 39 N. E. 691. By "construction" of a will we may understand the ascertainment of the meaning and force of the words thereof, and the effect in law of the dispositions made therein.  Cutting v. Cutting, 86 N. Y. 522–535. The interference of the statute is not determined by any act which "affects the construction."  The statute interferes to limit the testamentary power of a testator under the conditions expressed.  The will is not construed.  It stands as written "inoperative as to that portion of the estate which, if her mother had died intestate, would have been distributed to her as the next of kin."  Matter of Murphy, 144 N. Y. 561, 39 N. E. 691.  Thus the statute in protection of such children arrests the testamentary power of the mother to a degree, and in effect substitutes "the will of the state" so as to secure provision for them. The child in such a case does not take under the will.  Smith v. Robertson, 89 N. Y. 555.  The distinction is tersely put by Jessel, M. R., in Hasluck v. Pedley, 19 L. R. Eq. 271, when, speaking of the effect of the apportionment act, he said:  "The act does not affect the meaning of the will; it only alters its legal operation."

"In England a court of equity or common law, as the case may be, is called 'the Court of Construction' with regard to wills, as opposed to the Court of Probate, whose duty is to decide whether an instrument be a will at all.  Now, the Court of Probate may decide that a given instrument is a will, and yet the Court of Construction may decide that it has no operation by reason of perpetuities, illegality, or uncertainty."  Rapelye v. Lawrence, Law Dict. vol. 1, p. 273.  In Bishop v. Bishop, supra, the will was made in 1825, and the testator died in 1840. The court held that contrary to the law in 1825 and perforce of the statute of 1830 a devise went to the heir at law of the devisee, and put aside a saving clause exactly similar to that now invoked by the appellant, with the comment that it only went to the execution and construction.  In De Peyster v. Clendining, supra, the court held that perforce of the then forty-seventh section, enacted subsequent to the making of the will, but in existence long before the time of the death of the testator, the trust recognized at the time of the making of the will was turned into a legal estate in the beneficiary.  The point was made that this saving provision (then section 70, 2 Rev. St. [1st Ed.] pt. 2, c. 6, tit. 2) applied, but the chancellor said the provision as to not affecting the construction was not broad enough.

The learned counsel for the appellant relies upon Parker v. Bogardus, supra.  I think that it does not apply.  The court decided in that case that section 5 of the Revised Statutes, which was not enacted at

the time of the making of the will, but was enacted prior to the death of the testator, did not apply to the will, for the reason that the then section 77. which was in the same terms as the present saving section relied upon by the appellant, applied. But this section was held applicable, because the court said that section 5 involved a question of construction (pages 312, 313), and that the word "construed" in the fifth section, and the word "construction" in the seventy-seventh section, were used as synonymous. Hence, if the application of the section invoked by the plaintiff in this case (and I think it plain that it is not) is not one of construction, Parker's Case, supra, is not authority. The learned counsel for the appellant also lays stress upon the fact that at the close of the opinion in that case the court say, "The same remarks are applicable to section 49, which relates to an after-born child"; and contends that the court intended thereby that the utterances of the opinion to the effect that section 77 applied to section 5 because the question was one of construction likewise applied to section 49. I do not thus interpret the sentence. In the preceding part of the paragraph which contains this sentence the court distinguished De Peyster v. Clendining, supra. and Sherman v. Sherman, 3 Barb. 385, and then came to consider Bishop v. Bishop, supra. It said:

"The case of Bishop v. Bishop, 4 Hill, 138, decided that section 52 (2 Rev. St. [1st Ed.] pt. 2, c. 6, tit. 1) of the title, in relation to wills and testaments, applied to wills made before the adoption of the Revised Statutes, where the testator died after those statutes took effect. But there the son and heir at law of the devisee, who died in the lifetime of the testator, did not take under the will, but as special heir under the law. And the question was not one of construction, but, if it was, the decision was erroneous, and cannot be regarded as authority here."

Then immediately follows this sentence: "The same remarks are applicable to section 49, which relates to an after-born child"—i. e., the remarks which the court had just made with reference to Bishop v. Bishop. Hence the court meant to say that under section 49 the child did not take under the will, but as special heir under the law, and the question was not one of construction, with the reservation that, if it was, the decision in Bishop v. Bishop was not authority. The entire will is not revoked, but made inoperative as to that part of the estate which in case of intestacy of the testator would have descended or have been distributed to the after-born children. Smith v. Robertson, 89 N. Y. 555; Matter of Murphy, 144 N. Y. 557, 561, 39 N. E. 691. In Smith v. Robertson, supra, it was held that such a child might maintain ejectment, and upon the reasoning and force of that decision I think it clear that she can maintain this action.

There is no proof or finding that the testator died leaving the plaintiff "unprovided for by any settlement." This fact must appear before the statute applies. The policy of the statute is provision for such a child who is thus unprovided for outside of the will, and neither provided for nor in any way mentioned in the will, not for such a child who may have been provided for by a settlement, and yet is not provided for or is not in any way mentioned in the will; for, of course, the parent might have made fair and just provision for the child outside of any testamentary provision. Matter of Huiell, 6 Dem. Sur. 354.

The testimony and the documentary evidence show that the defendant, in ignorance of any title or claim of title by the plaintiff, paid off two certain mortgages which were upon the premises at the death of the testator, and hence the judgment should be without prejudice to a lien for the amount paid in discharge of the mortgages, or to be subrogated to the rights of the mortgagee. Smith v. Robertson, supra. It also appears that the defendant in like ignorance has paid for taxes, assessments, repairs, and improvements. The plaintiff is not entitled to partition unless the equitable rights of her co-tenant are respected. Ford v. Knapp, 102 N. Y. 135, 140, 141, 6 N. E. 283, 55 Am. Rep. 782; Jones v. Duerk, 25 App. Div. 551–560, et seq., 49 N. Y. Supp. 987; Fiero, Sp. Proc. vol. 1, 195, and authorities cited. I shall not attempt to define the exact measure of relief, inasmuch as the court in Ford v. Knapp, supra, say:

"Every case of the kind must be determined upon its own facts and surroundings, and those may occur in which such an allowance would be unjust and inequitable."

The judgment must, therefore, be reversed and a new trial granted, costs to abide the final award of costs. All concur.